**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

PAUL COON,

Plaintiff,

v. CIVIL ACTION NO. 2:25-cv-00374

WESTERN BRANCH DIESEL, LLC,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion for Summary Judgment by Defendant Western Branch Diesel ("Defendant" or "Western Branch"). (ECF No. 27.) For the reasons discussed below, this motion is **GRANTED**.

## *I. BACKGROUND*

This action arises out of Plaintiff Paul Coon's ("Plaintiff") employment at Western Branch. (ECF No. 1-1 at 4.). Defendant first hired Plaintiff as an On-Highway Parts and Service Representative on June 8, 2021. (ECF No. 27-1.) Then, in November of 2021, Plaintiff assumed the role of Fleet Maintenance Service Manager. (*Id.* at 61, 63.) Around this time, Plaintiff's wife started to experience health complications. (ECF No. 27-2 at 78.) That following year, in July of 2022, Plaintiff requested FMLA leave to care for his wife. (ECF No. 27-1.) Western Branch found Plaintiff ineligible for FMLA leave but offered to work with Plaintiff on taking the absences he needed. (*Id.*; ECF No. 34-1 at 84.)

In July of 2023, Plaintiff's position changed again and he became the Regional Service Sales Representative. (ECF No. 34-1 at 61, 63.) In this role, Plaintiff had responsibilities across multiple locations, including St. Clairsville, Ohio, Canton, Ohio, and South Charleston, West Virginia. (ECF No. 27-1 at 22; ECF No. 27-3 at 13.) Plaintiff reportedly struggled with some of the technology-related responsibilities associated with this position, such as inputting data in a spreadsheet and joining Microsoft Teams meetings. (ECF No. 34-4 at 32.)

One month after Plaintiff assumed this new position, his wife tragically passed away. (ECF No. 34-1 at 88.) The unfortunate passing of his wife also impacted Plaintiff's performance; he started making fewer customer calls and had repeated unexpected absences. (ECF No. 34-4 at 34–35.) In a letter to WorkForce West Virginia, Plaintiff admitted that his performance had declined since the passing of his wife. (ECF No. 34-22 at 1.) He "understood that [his] work was suffering." (*Id.*)

A few months later, on November 8, 2023, Western Branch placed Plaintiff on a Performance Improvement Plan ("PIP"). (ECF No. 34-12 at 2.) The PIP was scheduled to last for ninety days, starting on November 9, 2023, and ending on February 9, 2025. (*Id.*) As part of the PIP, Plaintiff was asked, *inter alia*, to make more customer calls and visits, update his contact lists, and improve his communication with service managers. (*Id.*) Plaintiff signed the PIP and agreed to be placed on the plan. (*Id.*)

At some unidentified time before Defendant placed Plaintiff on the PIP, Plaintiff had lunch with Western Branch's Director of sales fleet management, Hank Grahn, (ECF No. 27-4 at 9), and Derrick Bennett, another employee of Western Branch. (ECF No. 27-2 at 163.) At this lunch, Plaintiff alleges that Grahn "blurted . . . out of the blue . . . [w]e need to hire somebody younger in

your territory." (*Id.* at 164.) Grahn allegedly did not provide any further explanation for this comment. (*Id.* at 164–66.) Grahn does not remember making the comment. (ECF No. 27-4 at 21.)

Unexpectedly, just a month after being placed on the plan, Plaintiff sent a notice of resignation to Defendant. (ECF No. 27-1 at 20.) In that notice, Plaintiff took offense at being placed on the PIP, stating that his work suffered because of his wife's unexpected death. (*Id.*) Plaintiff also stated that some of his repeated absences should be considered vacation time that Defendant allegedly promised. (*Id.*) Instead of accepting Plaintiff's resignation, Defendant attempted to work with Plaintiff. (*Id.* at 18–19.) As a result, Plaintiff agreed to rescind his resignation with the understanding that he would tentatively retire in June of 2025. (*Id.*) The parties also agreed to meet in mid-late January to discuss the progress of the PIP. (*Id.*) This meeting never happened, but on January 29, 2024, internal email exchanges between Defendant's employees discussed Plaintiff's continuing performance struggles. (ECF No. 27-1 at 7.)

On February 2, 2024, two of Defendant's employees, Danielle Steele and Richie McCellan, met with Plaintiff and terminated his employment. (ECF No. 34-1 at 127–28.) During the meeting, Plaintiff recalls that Steele and McCellan mentioned his failure to complete the PIP and his unsatisfactory performance as reasons for the termination. (*Id.*) Plaintiff was sixty-three years old at the time of his termination. (ECF No. 27-2 at 5.)

Following Plaintiff's termination, Western Branch Hired Jason Burge, who Grahn guesses was "between 40 and 50" to take over two of Plaintiff's three assigned territories. (ECF No. 27-4 at 21–24). Grahn, who is the same age as Plaintiff, took over Plaintiff's third territory. (*Id.* at 21–23, 57)

Consequently, Plaintiff filed the present action in the Circuit Court of Kanawha County on May 5, 2025. (ECF No. 1-1.) Plaintiff's Complaint asserts only one cause of action—Age Discrimination in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 16B-17-1 *et seq.* (*Id.*) Defendant removed the case to this Court on June 6, 2025. (ECF No. 1.)

Defendant then filed the pending Motion for Summary Judgment on April 17, 2026, (ECF No. 27), Plaintiff filed a response, (ECF No. 34), and Defendant filed a reply, (ECF No. 42). As such, the motion is fully briefed and ripe for adjudication.

## *II. LEGAL STANDARD*

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the nonmovant to survive a summary judgment motion, they must counter with a "show[ing] that there is a genuine dispute of material fact." *Simmons v. Whitaker*, 106 F.4th 379, 384–85 (4th Cir. 2024). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News and Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Either party may prove or disprove a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In determining the existence of a genuine dispute of material fact, the Court must "view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## *I. DISCUSSION*

In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination, and that Plaintiff cannot show pretext. The Court addresses these arguments below.

### *A. Prima Facie Case of Age Discrimination*

Under the WVHRA, it is unlawful "[f]or any employer to discriminate against an individual with respect to . . . tenure . . . if the individual is able and competent to perform the services required[.]" W. Va. Code § 16B-17-9(1). "Discriminate" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age." W. Va. Code § 16B-17-3(h). An employment discrimination claim under the WVHRA is governed by the same analytic framework of Title VII of the Civil Rights Act of 1964, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Barefoot v. Sundale Nursing Home*, 457 S.E.2d

152, 159 (W. Va. 1995); *Calef v. FedEx Ground Packaging Sys., Inc.*, 343 F. App'x 891, 898 (4th Cir. 2009).

Under the burden-shifting *McDonnel Douglas* framework, the plaintiff must first establish a prima facie case of employment discrimination. *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 194 (W. Va. 2016). The plaintiff may carry this burden by establishing: "(1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." *Conaway v. Eastern Associated Coal Corp.*, 358 S.E.2d 423, 429 (1986). "[A] plaintiff can create a triable issue of discrimination animus through direct or circumstantial evidence." *Moore v. Consolidation Coal Co.*, 567 S.E.2d 661, 667 (W. Va. 2002).

Here, the parties contest only the third element of the first step under the *McDonnel Douglas* framework. There is no dispute that Plaintiff, who was sixty-three at the time of his termination, is a member of a protected class; nor that Defendant made an adverse employment decision by terminating Plaintiff. As to the third element, Plaintiff offers three separate arguments for why Defendant fired Plaintiff because of his age. (*See generally* ECF No. 34.)

1. Direct Evidence of Age Discrimination

First, Plaintiff argues there is direct evidence of age discrimination based on the statement made by Grahn that Defendant needed to hire someone younger in Plaintiff's territory. (ECF No. 34 at 9.) Defendant argues that this statement is not evidence of direct discrimination and should instead be considered a stray remark about generational change. (ECF No. 42 at 6.) The Court agrees.

"Because discrimination is essentially an element of the mind, there will probably be very little direct proof available." *Conaway*, 178 S.E.2d at 429. Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023). A plaintiff can show direct evidence of discrimination if the derogatory comment was "'(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.'" *Id.* (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)).

Here, Grahn's statement that Western Branch "need[s] to hire somebody younger in [Plaintiff's] territory[,]" (ECF No. 27-2 at 164), does not amount to direct evidence of discrimination. While the statement seemingly relates to Plaintiff's membership in a protected class of persons, Plaintiff has not provided sufficient evidence to satisfy the other three elements of direct discrimination. Under the second element, the statement does not proximately relate to the termination because it occurred *at least* three months before the termination of Plaintiff's employment. As to the third and fourth elements, Plaintiff has not provided any evidence that Grahn—the employee who made the statement—had any influence over Plaintiff's termination; nor has Plaintiff presented evidence that Grahn's statement related to Plaintiff's termination. *See Wadell v. John Q. Hammons Hotel*, 572 S.E.2d 925, 928 (W. Va. 2002) (finding insufficient evidence.) Thus, Plaintiff cannot meet his burden of showing direct evidence of age discrimination.

2. Circumstantial Evidence of Age Discrimination

Grahn's alleged statement also does not qualify as circumstantial evidence of age discrimination. "[G]eneral or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). "It is thus well established that comments that refer to making way for younger people do not create any inference of age bias." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 733 (4th Cir. 2019). Grahn's statement is nothing more than an ambiguous remark referring to the process of generational change. Grahn made the statement "out of the blue" and did not offer any further explanation for the statement. (ECF No. 27-2 at 168.) Viewed in this context, there is no evidence that this single statement bears any nexus to Plaintiff's ultimate termination. *See Lee v. W. VA. Univ. Med. Corp.*, No. 25-1306, 2026 WL 1993164, at *6 (4th Cir. July 10, 2026 (finding that repeated comments by leadership that the defendant wanted to hire someone "younger" did not evidence age discrimination because of the context).

Next, Plaintiff argues that Defendant's decision to hire Burge constitutes circumstantial evidence of age discrimination. The Court is not persuaded. "A plaintiff, who is age forty or older, pursuing an age discrimination claim under the WVHRA, may satisfy the third prong of the prima facie age discrimination test . . . by presenting evidence that he/she was replaced by a 'substantially younger' employee." *Knotts*, 786 S.E.2d at 198. There is no bright-line rule for what "substantially younger" means, but "'[a]ge differences of ten or more years have generally been held to be sufficiently substantial' to satisfy the 'substantially younger' rule." *Id.* (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).

Here, Plaintiff fails to present sufficient evidence of Burge's age and his alleged replacement of Plaintiff's job. Plaintiff alleges that because Burge is eighteen years younger than Plaintiff, Burge is a "substantially younger" replacement. (ECF No. 34 at 6, 10.) Yet the evidence shows that Burge's age is questionable. The only substantiated[1] evidence relating to Burge's age is a guess by Grahn that Burge was "between 40 and 50" when Defendant hired him to take over some of Plaintiff's job responsibilities. (ECF No. 27-4 at 24). This evidence—or lack thereof—is insufficient to show that Plaintiff "lost [his job] *because of his age*." *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (emphasis added). Additionally, the evidence does not show that Burge "replaced" Plaintiff. Burge assumed only two of Plaintiff's territories, and Grahn, who is the same age as Plaintiff, took over the third territory. (ECF No. 27-4 at 21, 23, 57.) Consequently, Plaintiff has not presented sufficient evidence to allow a reasonable jury to infer that Burge replaced Plaintiff because of his age.

Lastly, Plaintiff argues that circumstantial evidence of age discrimination exists because Defendant did not place Plaintiff on its progressive discipline policy and did not follow its own PIP policies. (ECF No. 34 at 12–13.) Plaintiff reasons that Defendant failed to follow its own PIP policy because it posted Plaintiff's job online before the PIP period ended. (*Id.* at 12.) The Court disagrees.

Every business has its own policies, "in the context of employment discrimination cases '[i]t is not for this court . . . to direct the business practices of any company.'" *Duffy v. Belk, Inc.*,

---

[1] Plaintiff also submitted as an exhibit a screenshot of information concerning a "Jason C Burge", born in 1979, who lives Shadyside Ohio. Plaintiff retrieved this screenshot from ohioresidentdatabase.com. (ECF No. 34-32.) This evidence is wholly unsubstantiated as Plaintiff has not established any evidence that this Jason Burge is the same Jason Burge who worked for Defendant. As such, it is not a reasonable inference.

477 Fed. App'x 91, 94 (4th Cir. 2012) (quoting *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992)). Indeed, courts do not "sit as a 'super-personnel department weighing the prudence of employment decisions[.]'" *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). In the present case, while Defendant may have had a "loose" progressive discipline policy, its overall process for handling low-performing employees largely depended on the "employee's performance" and how the employee progressed through the PIP. (ECF No. 34-5 at 15–21.) As such, Defendant's decision to place Plaintiff on a PIP instead of a progressive discipline policy does not create an inference of age discrimination.

Likewise, Defendant's decision to post Plaintiff's job online before the PIP period ended does not constitute evidence of age discrimination. Had Defendant wanted to get rid of Plaintiff early so it could replace him, Defendant could have accepted Plaintiff's resignation. (ECF No. 27-1 at 20.) Instead, Defendant attempted to work with Plaintiff, convincing him not to resign and keeping him on the PIP for the majority of its duration. (*Id.* at 18.) Defendant ultimately terminated Plaintiff not because it found a replacement but because Plaintiff's "performance ha[d] not improved" and Plaintiff showed "[l]ack of motivation to improve business." (*Id.* at 6.) Thus, Defendant's decisions to post Plaintiff's job online and to not place Plaintiff on a progressive discipline do not amount to circumstantial evidence of age discrimination.

Accordingly, Plaintiff has not established a prima facie case of discrimination through either direct or circumstantial evidence.

### *B. Non-Discriminatory Reason for the Termination and Pretext*

Once the Plaintiff meets his burden of establishing a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment decision. *Conaway*, 358 S.E.2d at 430. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." *Id.* If the proffered reason is nondiscriminatory, then the plaintiff regains the burden of showing by a preponderance of the evidence that the articulated reason is a mere pretext for the actual, discriminatory motive. *See Charleston Town Ctr. Co., LP*, 688 S.E.2d at 920–21.

Here, Defendant has consistently maintained that it terminated Plaintiff not because of his age, but because of his poor performance. (*See, e.g.,* ECF No. 34-12 at 5 (employment termination form); ECF No. 34-1 at 127–28 (Plaintiff's recollection of termination meeting.).) The record indicates ample evidence of Plaintiff's poor performance. Plaintiff had been struggling with his performance since the unfortunate passing of his wife. (ECF No. 34-4 at 35–35.) He "understood that [his] work was suffering." (ECF No. 34-22 at 1.) Defendant placed Plaintiff on the PIP because Plaintiff needed to improve his performance by making more customer calls and visits, updating his contact lists, and communicating more with Western Branch's service managers. (*See* ECF No. 34-12 at 2.) Additionally, right before Plaintiff's termination, one of Defendant's employees noted from his recent interactions with Plaintiff that Plaintiff was "making mistakes on the sales sheet" and showing a lack of understanding Western Branch's "programs as a whole." (*Id.* at 6.) Another managing employee, Walter Johnson, informed Plaintiff that his recent customer calls data had produced "disappointing" results. (ECF No. 27-1 at 33.)

Consequently, the evidence supports Defendant's allegations of Plaintiff's poor performance and Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination.

Plaintiff attempts to rebut these allegations by alleging that "sales calls had been going up during the period of the PIP." (ECF No. 34 at 15.) Notably, Plaintiff's only support for this assertion is his statement to WorkForce West Virginia that his "numbers had been improving[,]" (ECF No. 34-22 at 1), and his deposition testimony about this statement to WorkForce West Virginia, (ECF No. 34-1 at 135–36). Plaintiff did not elaborate on how, when, or to what degree his numbers went up, nor did he introduce any outside evidence to support this claim. Plaintiff's assertion about his sales calls thus amounts to "[m]ere unsupported speculation" that "is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). As such, Plaintiff fails to rebut Defendant's well-supported allegations of his poor performance.

"Pretext" as it relates to unlawful discriminatory employment practices "means an ostensible reason or motive assigned as a color or cover for the real reason or motive, or false appearance, or pretense." *Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773. Pretext of this nature may be shown through several forms of evidence: "(1) comparative evidence, (2) statistical evidence, and (3) direct evidence of discrimination, in the form of discriminatory statements and admissions." *Charleston Town Ctr. Co., LP*, 688 S.E.2d at 921 (quoting *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985)). If a plaintiff can, through direct or circumstantial evidence, show that the employer's nondiscriminatory reason for the employment decision is dishonest and a pretext, then discrimination may be inferred. See *Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773 (citing *Barefoot*, 457 S.E.2d at 156).

Plaintiff first argues pretext because Defendant initially represented to WorkForce West Virginia that it terminated Plaintiff because, *inter alia*, Plaintiff failed the internal phishing test. (ECF No. 34 at 14–15.) Defendant no longer points to this fact as a reason for Plaintiff's termination. According to Plaintiff, this "change in the reasons given for Plaintiff's termination . . . may create an inference of discrimination." (*Id.*) Yet again, the Court is not persuaded. Defendant's decision to drop one single reason for Plaintiff's termination does not constitute an "entirely different reason" for the termination that "changed *substantially* over time." *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 226 (4th Cir. 2019) (emphasis added).

Additionally, in a final, last-ditch effort, Plaintiff provides a bullet point list of evidence that "may suggest pretext in this case."[2] (ECF No. 34 at 14.) None of this evidence is "sufficiently probative of age discrimination[;]" nor does it establish that Defendant's reason for terminating Plaintiff is "unworthy of credence[.]" *Mereish*, 359 F.3d at 336. Thus, Plaintiff fails to show that Defendant's stated reason for his termination is a pretext.

---

[2] Plaintiff asserts the following evidence "may suggest" pretext:

(1) Johnson's testimony that the sales numbers dropped in South Charleston because of a "lack of effort from the team . . . not just [Plaintiff]." (ECF No. 34 at 14 (citing ECF No. 34-4 at 24).)
(2) Plaintiff's testimony that "sales were slow in November/December of 2023 not due to a lack of effort during the holiday season in 2023 but because it was the holiday season." (*Id.* at 15 (citing ECF No. 34-1 at 135-137).
(3) Plaintiff "needed training on a new system of reporting and his contacts needed updated in the system for accurate reporting." (*Id.* (citing ECF Nos. 34-14, 34-14, 34-15).)
(4) Grahn admitting "that [Plaintiff] was in a smaller market 'so we didn't expect as much from him[.]'" (*Id.* (citing ECF No. 34-2 at 27).)
(5) Plaintiff's testimony that his "sales calls had been going up during the period of the PIP." (*Id.* (citing ECF No. 34-22 at 1; ECF No. 34-1 at 135–36).)
(6) "Johnson['s] testi[mony] . . . that there was no way to determine whether [Plaintiff] completed some portions of [the PIP]." (*Id.* (citing ECF No. 34-4 at 59–60, 64).)
(7) Grahn's testimony "that he did not recall having any meetings with [Plaintiff] to discuss the progress on the PIP." (*Id.* (citing ECF No. 34-2 at 42-43).)
(8) Plaintiff's testimony "that he was already doing some of the items contained on the PIP." (*Id.* (citing ECF No. 34-1 at 90-97).)
(9) "Defendant accused [Plaintiff] of making mistakes using the new sales program but the mistakes were caused by errors within the program itself." (*Id.* (citing ECF No. 34-1 at 113-118; ECF No. 34-3 at 22-25).

## *III. CONCLUSION*

Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to whether his termination was due to his age. For the foregoing reasons, Defendant's motion for summary judgment, (ECF No. 27), is **GRANTED**.[3] Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 17, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

[3] For the same reasons, the Pretrial/Final Settlement Conference currently scheduled for August 18, 2026, is hereby **CANCELED**.